# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

ALEXANDER KACHMAR, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

JURY TRIAL DEMANDED

FARMLAND PARTNERS INC., PAUL A. PITTMAN, and LUCA FABBRI,

Defendants.

---

# CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

---

Plaintiff Alexander Kachmar ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Farmland Partners Inc. ("Farmland Partners" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Farmland Partners securities between May 9, 2017 through July 10, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Farmland Partners is an internally managed real estate company that owns and seeks to acquire high-quality North American farmland and makes loans to farmers secured by farm real estate. Farmland purports to own or have under contract over 166,000 acres in 17 states.

3.     Farmland Partners is based in Denver, Colorado.  Its common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "FPI", and its Series B preferred stock trades on the NYSE under the ticker symbol "FPI.B".

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Farmland Partners artificially increased its revenues by marking loans to related party tenants; (ii) as a results of the foregoing, Farmland Partners' Class Period revenues were overstated; and (iii) as a result, Farmland Partners' public statements were materially false and misleading at all relevant times.

5.     On July 11, 2018, Rota Fortunae published an online report alleging that Farmland artificially increased revenues "by making loans to related-party tenants who round-

2

trip the cash back to FPI as rent." According to the report, 310% of Farmland's 2017 earnings could be fabricated. The report further stated that "[w]e found evidence that strongly supports FPI has significantly overpaid for properties; under normal circumstances, we estimate FPI is worth $4.85/share, but we think the shares are un-investible."

6.      On this news, the price of Farmland Partners common stock fell $3.37, or 38.96%, to close at $5.28 on July 11, 2018, and the price of Farmland Partners Series B preferred stock fell $6.08, or 24.75%, to close at $18.49 on July 11, 2018.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>**JURISDICTION AND VENUE**</u>

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Farmland Partners' principal executive offices are located within this Judicial District.

11.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Farmland Partners's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Farmland Partners is incorporated in Maryland, with principal executive offices located at 4600 South Syracuse Street, Suite 1450, Denver, Colorado 820237. Farmland Partners' securities trade on the NYSE.

14.     Defendant Paul A. Pittman ("Pittman") has served at all relevant times as the Company's Chief Executive Officer, Chairman and President.

15.     Defendant Luca Fabbri ("Fabbri") has served at all relevant times as the Company's Chief Financial Officer and Treasurer.

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Farmland Partners' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

## Background

18.     Farmland Partners is an internally managed real estate company that owns and seeks to acquire high-quality North American farmland and makes loans to farmers secured by farm real estate. Farmland purports to own or have under contract over 166,000 acres in 17 states.

## Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on May 9, 2017, when Farmland Partners issued a press release and filed a current report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 8-K"). For the quarter, Farmland Partners reported a net loss of $1.63 million on revenue of $7.15 million, compared to a net loss of $1.35 million on revenue of $4.69 million for the same period in the prior year.

20.     The Q1 2017 8-K stated, in part:

"***The substantial quarter-over-quarter revenue increase is indicative of the growth we achieved in the last twelve months,***" said Paul Pittman, the Company's CEO. "A combination of one-time expenses and understated revenue recognition due to the timing of the close of the AFCO merger as well as the effective dates of other new leases during the quarter negatively affected our reported financial performance measures."

21.     On May 10, 2018, Farmland Partners filed a quarterly report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Q1 2017 8-K (the "Q1 2017 10-Q"). In the Q1 2017 10-Q, with respect to related party transactions, Farmland Partners merely stated, in part:

**Note 4—Related Party Transactions**

On July 21, 2015, the Company entered into a lease agreement with American Agriculture Aviation LLC ("American Ag Aviation") for the use of a private plane. American Ag Aviation is a Colorado limited liability company that is

5

owned 100% by Mr. Pittman.  During the three months ended March 31, 2017 and 2016, the Company incurred costs of $83,791 and $47,053, respectively, from American Ag Aviation for use of the aircraft in accordance with the lease agreement. These costs were recognized based on the nature of the associated use of the aircraft, as follows: (i) general and administrative - expensed as general and administrative expenses within the Company's consolidated statements of operations; (ii) land acquisition (accounted for as an asset acquisition) - allocated to the acquired real estate assets within the Company's consolidated balance sheets; and (iii) land acquisition (accounted for as a business combination) - expensed as acquisition and due diligence costs within the Company's consolidated statements of operations.

22.     The Q1 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the Q1 2017 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

23.     On July 20, 2017, Farmland Partners issued a press release and filed a current report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 8-K").   For the quarter, Farmland Partners reported net income of $1.69 million on revenue of $11.46 million, compared to net income of $870,000 on revenue of $6.03 million for the same period in the prior year.

24.     The Q2 2017 8-K stated, in part:

"This was a quarter marked by healthy year-over-year AFFO per share growth. Our second quarter 2017 results are more indicative of our ongoing operations as compared to the first quarter of 2017, which included the closing of the AFCO merger and related integration activities during the quarter," said Paul Pittman, CEO of the Company. "We are maintaining our prior full year 2017 AFFO per

share guidance. We expect to recognize the majority of our participating revenue, with a positive impact on AFFO, in the second half of the year."

25.     On July 21, 2017, Farmland Partners filed a quarterly report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Q2 2017 8-K (the "Q2 2017 10-Q").  In the Q2 2017 10-Q, with respect to related party transactions, Farmland Partners merely stated, in part:

**Note 4—Related Party Transactions**

On July 21, 2015, the Company entered into a lease agreement with American Agriculture Aviation LLC ("American Ag Aviation") for the use of a private plane.  American Ag Aviation is a Colorado limited liability company that is owned 100% by Mr. Pittman.  The Company incurred costs of $135,478 and $96,469, respectively, during the six months ended June 30, 2017 and 2016 and $51,687 and $49,416, respectively, during the three months ended June 30, 2017 and 2016 from American Ag Aviation for use of the aircraft in accordance with the lease agreement. These costs were recognized based on the nature of the associated use of the aircraft, as follows: (i) general and administrative - expensed as general and administrative expenses within the Company's consolidated statements of operations; (ii) land acquisition (accounted for as an asset acquisition) - allocated to the acquired real estate assets within the Company's consolidated balance sheets; and (iii) land acquisition (accounted for as a business combination) - expensed as acquisition and due diligence costs within the Company's consolidated statements of operations.

26.     The Q2 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the Q2 2017 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

27.     On November 8, 2017, Farmland Partners issued a press release and filed a current report on Form 8-K with the SEC, announcing the Company's financial and operating

results for the quarter ended September 30, 2017 (the "Q3 2017 8-K"). For the quarter, Farmland Partners reported net income of $2.22 million on revenue of $12.05 million, compared to net income of $70,000 on revenue of $6.95 million for the same period in the prior year.

28.     On November 9, 2017, Farmland Partners filed a quarterly report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Q3 2017 8-K (the "Q3 2017 10-Q"). In the Q3 2017 10-Q, with respect to related party transactions, Farmland Partners merely stated, in part:

**Note 4—Related Party Transactions**

On July 21, 2015, the Company entered into a lease agreement with American Agriculture Aviation LLC ("American Ag Aviation") for the use of a private plane. American Ag Aviation is a Colorado limited liability company that is owned 100% by Mr. Pittman. The Company incurred costs of $0.16 million and $0.14 million, respectively, during the nine months ended September 30, 2017 and 2016 and $0.02 million and $0.05 million, respectively, during the three months ended September 30, 2017 and 2016 from American Ag Aviation for use of the aircraft in accordance with the lease agreement. These costs were recognized based on the nature of the associated use of the aircraft, as follows: (i) general and administrative - expensed as general and administrative expenses within the Company's consolidated statements of operations; (ii) land acquisition (accounted for as an asset acquisition) - allocated to the acquired real estate assets within the Company's consolidated balance sheets; and (iii) land acquisition (accounted for as a business combination) - expensed as acquisition and due diligence costs within the Company's consolidated statements of operations.

29.     The Q3 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the Q3 2017 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

30.     On March 1, 2018, Farmland Partners issued a press release and filed a current report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 8-K").   For the quarter, Farmland Partners reported net income of $5.64 million on revenue of $15.65 million, compared to net income of $4.71 million on revenue of $13.33 million for the same period in the prior year.   For 2017, Farmland Partners reported net income of $7.91 million on revenue of $46.22 million, compared to net income of $4.3 million on revenue of $31 million for 2016.

31.     The 2017 8-K stated, in part:

"The fourth quarter of 2017 punctuated what we believe was a strong year for the Company. We were able to beat the midpoint of our original 2017 full year AFFO per share guidance, despite incurring approximately $0.09 per share of preferred dividend costs we had not originally expected" said Paul Pittman, CEO of the Company. "We continue to increase scale and reduce expenses as a percentage of revenue and assets."

32.     On March 5, 2018, Farmland Partners filed an annual report on Form 10-K with the SEC, reiterating the financial and operating results previously announced in the 2017 8-K (the "2017 10-K").   In the Q1 2018 10-Q, with respect to related party transactions, Farmland Partners merely stated, in part:

**Note 4—Related Party Transactions**

On July 21, 2015, the Company entered into a lease agreement with American Agriculture Aviation LLC ("American Ag Aviation") for the use of a private plane. American Ag Aviation is a Colorado limited liability company that is owned 100% by Mr. Pittman, the Company's CEO. During the years ended December 31, 2017, 2016 and 2015, the Company incurred costs of $0.2 million,  $0.2 million and $0.1 million, respectively, from American Ag Aviation for use of the aircraft in accordance with the lease agreement. These costs were recognized based on the nature of the associated use of the aircraft, as follows: (i) general and administrative - expensed as general and administrative expenses within the Company's Consolidated Statements of Operations; (ii) land acquisition (accounted for as an asset acquisition) - allocated to the acquired real estate assets within the Company's consolidated balance sheets; and (iii) land acquisition (accounted for as a business combination) - expensed as acquisition

and due diligence costs within the Company's Consolidated Statements of Operations. As of December 31, 2017 and 2016 the Company had outstanding payables to American Agriculture Aviation LLC of $0.01 million and $0.01 million, respectively.

Effective as of December 31, 2015, Mr. Pittman neither owns any direct or indirect interest in, nor has control of, Astoria Farms and Hough Farms. As of December 31, 2017 and 2016, 4% and 6%, respectively, of the acres in the Company's farm portfolio were rented to and operated by Astoria Farms or Hough Farms, both of which were related parties until December 31, 2015. Astoria Farms is a partnership in which Pittman Hough Farms LLC ("Pittman Hough Farms"), which was previously 75% owned by Mr. Pittman, had a 33.34% interest. The balance of Astoria Farms was held by limited partnerships in which Mr. Pittman was previously the general partner. Hough Farms is a partnership in which Pittman Hough Farms previously had a 25% interest. The aggregate rent recognized by the Company for these entities for the years ended December 31, 2017, 2016 and 2015 was $2.0 million, $2.5 million and $2.7 million, respectively. As of December 31, 2016 and 2015, the Company did not have any accounts receivable from these entities.

For the years ended December 31, 2017, 2016 and 2015, Pittman Hough Farms incurred $0, $0 and $0, respectively, in professional fees on behalf of the Company. These fees were reimbursed by the Company.

Effective as of December 31, 2015, Mr. Pittman does not own any interest in American Agriculture Corporation (''American Agriculture''). American Agriculture is a Colorado corporation that was 75% owned by Mr. Pittman and 25% owned by Jesse J. Hough, who provides consulting services to the Company. The Company reimbursed American Agriculture $0, $0 and $21,259, respectively, for general and administrative expenses during the year ended December 31, 2017, 2016 and 2015, which are included in general and administrative expenses in the consolidated statements of operations.

33.     The 2017 10-K contained signed certifications pursuant to SOX by the Individual Defendants, stating that the 2017 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

34.     On May 9, 2018, Farmland Partners issued a press release and filed a current report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2018 (the "Q1 2018 8-K").   For the quarter, Farmland Partners reported net income of $503,000 on revenue of $9.94 million, compared to a net loss of $2 million on revenue of $6.8 million for the same period in the prior year.

35.     The Q1 2018 8-K stated, in part:

"We are continuing to grow revenues while trimming our cost structure," said Paul A. Pittman, the Company's Chief Executive Officer. "The benefits of scale are clearly showing up in our first quarter's financial results. We expect such benefits to increase even further as we progress through the year, largely due to the concentration of revenue recognition in the fourth quarter for some of our properties."

36.     On May 10, 2018, Farmland Partners filed a quarterly report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Q1 2018 8-K (the "Q1 2018 10-Q").   In the Q1 2018 10-Q, with respect to related party transactions, Farmland Partners merely stated, in part:

**Note 4—Related Party Transactions**

On July 21, 2015, the Company entered into a lease agreement with American Agriculture Aviation LLC ("American Ag Aviation") for the use of a private plane. American Ag Aviation is a Colorado limited liability company that is owned 100% by Mr. Pittman. The Company incurred costs of $0.04 million and $0.08 million, respectively, during the three months ended March 31, 2018 and 2017 from American Ag Aviation for use of the aircraft in accordance with the lease agreement. These costs were recognized based on the nature of the associated use of the aircraft, as follows: (i) general and administrative - expensed as general and administrative expenses within the Company's consolidated statements of operations; (ii) land acquisition (accounted for as an asset acquisition) - allocated to the acquired real estate assets within the Company's consolidated balance sheets; and (iii) land acquisition (accounted for as a business combination) - expensed as acquisition and due diligence costs within the Company's consolidated statements of operations.

37.     The Q1 2018 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the Q1 2018 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

38.     The statements referenced in ¶¶ 19-37 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Farmland Partners artificially increased its revenues by making loans to related party tenants; (ii) as a results of the foregoing, Farmland Partners' Class Period revenues were overstated; and (iii) as a result, Farmland Partners' public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

39.     On July 11, 2018, Rota Fortunae published an online report on Farmland Partners entitled "Related-Party Tenants Introduce Significant Risk Of Insolvency - Shares Uninvestible". The report summarized its findings as follows:

**Summary**

- We believe ***FPI is artificially increasing revenues by making loans to related-party tenants*** who round-trip the cash back to FPI as rent***; 310% of 2017 earnings could be made-up***.

- FPI has neglected to disclose that *the majority of its loans have been made to two members of the management team*, including Jesse Hough, CEO Paul Pittman's long-time business partner.

- A UCC shows "Pittman Hough" pledged shares of FPI for a loan then FPI's stock fell 30%, and two weeks after reaching an all-time low, FPI began lending to Hough.

- Four board members and FPI's president have resigned since FPI began lending to Hough, and in March, FPI dismissed its auditor.

- We found evidence that strongly supports FPI has significantly overpaid for properties; under normal circumstances, we estimate FPI is worth $4.85/share, but we think the shares are uninvestible.

(Emphases added.)

 40. The report further stated, in relevant part:

**The FPI Loan Program**

In August 2015, Farmland Partners introduced the FPI Loan Program to "address a market need created by short term cash flow pressure on farmers who otherwise maintain solid balance sheets" but cannot get traditional funding. The press release promoted FPI's quick underwriting abilities and conservative loan-to-value criteria. Further disclosure given in the 3Q2015 10-Q (pg. 21) states "the company intends to make loans to third-party farmers (both tenant and non-tenant)."

\* \* \*

[W]e found that *FPI has neglected to disclose that $9.2 Million (out of a total of $15.4 Million) in loans have been made to Ryan Niebur and Jesse Hough, who are both members of FPI's management team. We believe these loans lack economic substance and have been used to artificially increase revenues.*

Publicly available documents show that FPI has engaged in a pattern of transactions where it makes a loan against a property, acquires the property around the time the loan matures, enters into a lease with the borrower, and days later lends more money to the borrower/new tenant.

(Emphasis added.)

13

41.     On this news, the price of Farmland Partners common stock fell $3.37, or 38.96%, to close at $5.28 on July 11, 2018, and the price of Farmland Partners Series B preferred stock fell $6.08, or 24.75%, to close at $18.49 on July 11, 2018.

42.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Farmland Partners securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Farmland Partners securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Farmland Partners or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Farmland Partners;

- whether the Individual Defendants caused Farmland Partners to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Farmland Partners securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

49.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Farmland Partners  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Farmland Partners securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Farmland Partners securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Farmland Partners securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

55.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Farmland Partners securities.   Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Farmland Partners's finances and business prospects.

56.     By virtue of their positions at Farmland Partners , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.   Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.   In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

57.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.   As the senior managers and/or directors of Farmland Partners, the Individual Defendants had knowledge of the details of Farmland Partners's internal affairs.

58.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Farmland Partners.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Farmland Partners's businesses, operations, future financial condition and future prospects.   As a

result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Farmland Partners securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Farmland Partners's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Farmland Partners securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

59.     During the Class Period, Farmland Partners securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Farmland Partners securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Farmland Partners securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Farmland Partners securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

62.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of Farmland Partners, and conducted and participated, directly and indirectly, in the conduct of Farmland Partners's business affairs.  Because of their senior positions, they knew the adverse non-public information about Farmland Partners's misstatement of income and expenses and false financial statements.

64.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Farmland Partners's financial condition and results of operations, and to correct promptly any public statements issued by Farmland Partners which had become materially false or misleading.

65.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Farmland Partners disseminated in the marketplace during the Class Period concerning Farmland Partners's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Farmland Partners to

engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Farmland Partners within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Farmland Partners securities.

66. Each of the Individual Defendants, therefore, acted as a controlling person of Farmland Partners. By reason of their senior management positions and/or being directors of Farmland Partners, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Farmland Partners to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Farmland Partners and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

67. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Farmland Partners.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 11, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
1200 Ashwood Parkway
Suite 410
Atlanta, GA  30338
Telephone:  (770) 392-0090
Facsimile:  (770) 392-0029
Email: cholzer@holzerlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| FPI | 5/29/18 | 100 shares of Series B | $24.70 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| FPI | | | |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

N/A

DocuSign Envelope ID: 53E3B552-D647-41BA-9C59-FBF724EB0C20

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _____ , 2018 in _____ , _____ .
11          July                    Hobe Sound                    FL
                                                City                      State

(Signature) X_____
DocuSigned by:
*Alexander Kachmar*
80C53B79B0C5452...

(Print Name)_____
Alexander Kachmar

**FARMLAND PARTNERS INC. (FPI; FPI.B)**                                    **Kachmar, Alexander**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 5/29/2018 | Purchase | 100 | $24.7000 |